## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK CLARK, | : | Civil No. 1:22-CV-00564 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| J. WEAVER, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Doc. 76.) Also pending is Plaintiff's motion for a hearing or status report. (Doc. 85.) For the following reasons, the court will grant Defendants' motion for summary judgment, enter judgment in Defendants' favor, deny Plaintiff's motion for a hearing, and close the case.

### BACKGROUND AND PROCEDURAL HISTORY

Mark Clark ("Plaintiff") initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 in April of 2022. (Doc. 1.) The complaint named nineteen defendants: (1) J. Weaver ("Weaver"), the Lieutenant at SCI-Forest; (2) John Doe Smouse ("Smouse"), Sergeant; (3) John Doe Cochran ("Cochran"), Lieutenant; (4) John Doe Deal ("Deal"), Captain; (5) Brown, Correctional Officer; (6) C. Carter ("Carter"), Captain; (7) John Doe Detrek ("Detrek"), Correctional Officer; (8) John Doe Beatty ("Beatty"), Correctional Officer; (9) John Mason ("Mason"),

Correctional Officer; (10) SCI-Forest; (11) John Doe Ferranger ("Ferranger"),

Correctional Officer; (12) John Doe Mackenzie ("Mackenzie"), Correctional

Officer; (13) Department of Corrections ("DOC"); (14) D. Oberlander

("Oberlander"), Facility Manager; (15) John Doe Sloane ("Sloane"), Correctional

Officer; (16) Secretary of the DOC; (17) John Doe-Burkhardt ("Burkhardt"); (18)

Mealy, Sergeant; and (19) John Doe-Merk ("Merk"), Shift Commander.  (*Id*., pp.

1–2.)  Plaintiff was granted *in forma pauperis* status and the court served

Defendants with the complaint on May 4, 2022.  (Doc. 11.)  Defendants answered

the complaint on July 19, 2022.  (Doc. 16.)  Plaintiff filed an amended complaint

on May 11, 2023.  (Doc. 57.)  The amended complaint does not enumerate

Plaintiff's claims or set out the intended defendants, but it does set forth a series of

alleged facts.  (*Id*.)

The amended complaint alleges that on February 11, 2021, Plaintiff was

involved in an "incident with multiple corrections officers" when he placed a towel

on his door window while using the bathroom.  (*Id*., p. 1.)  Plaintiff alleges that

while using the restroom, Defendant Lesko knocked on the door and when Plaintiff

told him he was using the bathroom, he opened the tray slot in the door and started

spraying O.C. spray.  (*Id*.)  After the spraying stopped, Defendants Burkhardt,

Mason, Ferranger, Mealy, and Cochran arrived at the cell door.  (*Id*.)  Defendant

Mason then began recording with a handheld camera.  (*Id*.)  Plaintiff was then

cuffed up and escorted to the medical triage.  (*Id.*)  Plaintiff alleges that "[a]fter

being cleared by medical staff," he was escorted to the Restricted Housing Unit

("RHU") "strip cage," and was strip searched by Defendants Mealy and Cochran

while Defendant Mason recorded the strip search. (*Id.*, p. 2.)  Defendant Mealy

confiscated Plaintiff's underwear, socks, and t-shirt.  (*Id.*)  Plaintiff asked why his

clothes were being confiscated, and Defendant Cochran told him that Captain

Merk told him to take them.  (*Id.*)  Plaintiff alleges he was then given an RHU

jumper, was cuffed, and escorted by Defendants Burkhardt and Ferranger to cell

K-C-1006 with Defendants Cochran, Mealy, and Mason following.  (*Id.*)

Defendant Mason continued recording. (*Id.*)

　　　Plaintiff alleges that after closing the cell door and removing the handcuffs,

Defendant Cochran instructed Defendant Mason to continue recording for three

minutes.  (*Id.*)  After recording for "a few minutes" Defendant Mason turned off

the camera and walked away.  (*Id.*)  Plaintiff alleges the cell contained only a bare

mattress.  (*Id.*)  He further alleges that several minutes later, Defendant Mason

returned, and Plaintiff asked him where the sheets, blanket, toilet paper, and soap

were.  (*Id.*)  Plaintiff alleges that Defendant Mason said that the shift commander

told him not to give Plaintiff anything.  (*Id.*)

　　　Later, Plaintiff called Defendant Ferranger to the cell door and asked him

about getting a blanket, toilet paper, and soap, but was told again that the shift

commander instructed him not to give Plaintiff anything.  (*Id*.)  Plaintiff further alleges that throughout the rest of that day, he asked multiple officers about getting a cover, toilet paper, and soap, but was told that the shift commander had told them not to give him anything.  (*Id*.)  Plaintiff alleges that due to the freezing climate and cold temperature, he was unable to sleep that night.  (*Id*.)

Plaintiff alleges that during the night med-line he informed Nurse Amanda of the conditions of his confinement and told her he wanted to file a Prison Rape Elimination Act ("PREA") claim and an abuse claim.  (*Id*., p. 3.)

Plaintiff alleges that on February 12, 2021, he stopped "multiple officers" inquiring on why he could not have a blanket, and all the officers said there was nothing they could do.  (*Id*.)

Plaintiff alleges that on February 13, 2021, Defendant Weaver approached his cell, stated he was aware of the PREA and abuse allegations and denied that any of his officers were abusing Plaintiff.  (*Id*.)  Plaintiff also reported telling Defendant Weaver that being left in his cell with nothing to protect him from the cold is continued abuse.  (*Id*.)  Plaintiff alleges that Defendant Weaver said that he was following procedure and "just because they took your underwear, that[']s sexual harassment because its procedure here at forest."  (*Id*.)  Plaintiff also alleges that Defendant Weaver refused him toiletries that evening because he continued to file "false reports."  (*Id*.)

Plaintiff alleges that later that shift Defendant Brown and another officer were passing out toiletries and when they came to Plaintiff's cell, Defendant Brown put the toiletries in a brown paper bag, showed Plaintiff the contents of the bag, put the bag on the floor in the corner outside Plaintiff's cell door, and stated "Weaver said, when you stop the dumb shit, then you can get this!" (*Id.*)

Plaintiff alleges that at approximately 3:00 p.m. on February 14, 2021, Defendant McKenzie was conducting an observation round in the unit when Plaintiff stopped and asked him when he can have his possessions back. (*Id.*) Plaintiff alleges that Defendant McKenzie said "[i]f you stop acting like a dick, you might get your possessions back later today." (*Id.*)

Plaintiff alleges that at 7:30 p.m. that same day, Defendant Brown came to his cell with a cart carrying all possessions that were bagged up due to the O.C. spray. (*Id.*) Plaintiff alleges that Defendant Brown started handing him his underwear but stopped when Plaintiff said "I don't want them sheets or blanket that in the bag because they got OC spray on them still." (*Id.*) Plaintiff alleges that he requested new sheets and a blanket, and when Defendant Brown said "I was told to give you back what they took from you." (*Id.*) Plaintiff then states that he asked for new sheets and a blanket, and Defendant Brown allegedly stated something the court cannot discern and left. (*Id.*)

Plaintiff alleges that on February 16, 2021 at 7:00 a.m., Defendant Weaver approached Plaintiff's cell door.  (*Id*.)  Plaintiff states that he had just "overcome" a misconduct from the February 11, 2021 incident, and he asked Defendant Weaver about the return of his possessions and underclothes.  (*Id*.)  Plaintiff alleges that Defendant Weaver told him he was on a no-cell content restriction and that he put Plaintiff on the no-cell restriction at the request of the Commander. (*Id*.)

Plaintiff alleges that on February 17, 2021 at 3:20 p.m., block officers and Defendant Smouse skipped him for showers.  (*Id*.)  When he asked if he would not get a shower, Defendant Smouse said "I heard you like filing dumbass PREA and abuse reports against my officers, so no."  (*Id*.)  At 6:25 p.m., Defendant Brown approached his cell and stated that Defendant Weaver sent him to see if Plaintiff was done being a "pain in the ass."  (*Id*., p. 5.)  Plaintiff stated he did not want his things that were covered in OC spay, and Defendant Brown said that he was told to give him back his possessions.  (*Id*.)  Plaintiff again said he did not want any sheets or blanket that smells like OC spray, and Defendant Brown walked away.  (*Id*.)  Plaintiff states "I was denied my possessions being returned and underwear due to me not taking the old sheets and blanket that were exposed to OC spray."  (*Id*.)

Plaintiff alleges that on February 18, 2021 at 3:00 p.m., Defendant Smouse refused to let him leave his cell to inventory his property, but gave him the choice

of Defendant Smouse inventorying his property on a table in front of his cell or having Defendant Smouse inventory his property without him. (*Id*.) Plaintiff alleges that he chose to have Defendant Smouse inventory the property in front of his cell. (*Id*.) Plaintiff alleges that Defendants Smouse and Beatty inventoried his property and placed it all on the floor in a janitor's closet and shut the door. (*Id*.) Plaintiff alleges that Defendant Smouse then stated "[i]f you stop the bullshit, you'll get your stuff before I leave tonight." (*Id*.) Plaintiff alleges that at 9:00 p.m., Defendant Smouse gave him his property through the tray slot stating "we gave you all your property, now stop the bullshit!" (*Id*., p. 6.)

Plaintiff alleges that on February 19, 2021, at 5:30 p.m., Defendant Oberlander was making a round, and Plaintiff stopped him and asked why the officers took his underwear socks, t-shirt, sheets, and blanket. (*Id*.) Defendant Oberlander allegedly told him it was part of the 6.5.1 policy procedures. (*Id*.) Plaintiff alleges that he told Defendant Oberlander that it was abuse, and Defendant Oberlander said he disagreed. (*Id*.)

Plaintiff alleges that after committing self-harm, he was removed from that unit and taken to the medical department in a psychiatric observation cell. (*Id*.)

Plaintiff alleges that throughout the events he was denied his eyeglasses, he was not permitted to take a shower, and he was under quarantine. (*Id*.) He alleges

that the conditions and treatment he received left him susceptible to sickness and COVID-19.  (*Id.*)

On September 5, 2023, Defendants filed a motion for summary judgment, the required statement of facts, and a brief in support.  (Docs. 76, 77, 78.) Defendants construed the amended complaint as raising an Eighth Amendment excessive force claim, an Eighth Amendment failure to intervene claim, an Eighth Amendment conditions of confinement claim, and a First Amendment retaliation claim.  (Doc. 78.)  Plaintiff filed a brief in opposition and statement of facts on October 31, 2023.  (Docs. 81, 82.)  Plaintiff states that he is not asserting an excessive force claim.  (Doc. 81, p. 3.)  Instead, Plaintiff is asserting a "failure to intervene, failure to act, conditions of confinement, failure to protect, cruel and unusual punishment, deliberate indifference, indirect participation, deprivation of clothing, civil conspiracy claim, and first amendment retaliation," claim against Defendants.  (*Id.*)  Defendants filed a reply on November 14, 2023.  (Doc. 83.)

On July 1, 2024, Plaintiff filed a motion for hearing or status report on the case.  (Doc. 85.)

The court will now address Plaintiff's motion for summary judgment and the motion for a hearing or status report.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper pursuant to the court's March 23, 2023 order.  (Doc. 47.)

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case."  *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher*

*Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### DISCUSSION

For the reasons explained in this section, the court will grant judgment in favor of Defendant DOC, Secretary of Corrections, Carter, and Oberlander based on a lack of any alleged personal involvement in the amended complaint. In addition, the court will grant judgment in favor of the remaining Defendants because Plaintiff failed to exhaust his administrative remedies.

### A. Undisputed Facts

The majority of Defendants' statement of undisputed facts is a summary of the allegations made in Plaintiff's amended complaint. (Doc. 77.) The majority of evidence relied upon outside of Plaintiff's amended complaint is Plaintiff's deposition and the use of force report of February 11, 2021. (Docs. 77, 77-1, 77-2.)

Defendants have presented evidence that following the use of the OC spray on February 11, 2021, Plaintiff was escorted to triage and assessed. (Doc. 77-2, p. 3.) Plaintiff refused decontamination by Nurse Vito. (*Id*.) The report states that no injuries were reported during the assessment. (*Id*.) The report states that

11

Plaintiff "was then escorted to the stripe area and was strip searched and given a clean jumpsuit.  Due to acting out and covering his cell door, Inmate Clark was moved to cell K-C-1006 which is a secure wicket/camera cell and secured without further incident."  (*Id*.)  Defendant Weaver requested and received permission from the Superintendent Oberlander of SCI-Forest for a seven-day "movement and cell content restriction (mattress, anti-tear blanket, and jumpsuit only) due to I/M using cell content to cover cell windows causing UUOF.  Cell material to be returned gradually based on behavior during 7 day period."  (Doc. 77-3.)

Plaintiff filed a statement of material facts that does not challenge the facts set forth by Defendants.  (Doc. 82.)

### B. Judgment Will Be Entered In Favor of Defendants Who Had No Personal Involvement.

First, the court will grant judgment in favor of Defendants DOC, SCI-Forest, Secretary of Corrections, Carter, and Oberlander based on a lack of any alleged personal involvement in the amended complaint.

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged

wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

### 1. Defendants DOC And SCI-Forest

Here, Plaintiff named the DOC and SCI-Forest as defendants in the initial complaint, but then failed to specifically identify any defendants in his amended complaint. (Doc. 1, p. 2; Doc. 57.) This alone is a sufficient reason to enter judgment in the favor of these Defendants.

Additionally, it is well-settled that neither a state nor its agencies, are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit. *Hafer v. Melo*, 502 U.S. 21, 25–27 (1997). Similarly, neither a prison nor a department within a prison is a "person" subject to suit under § 1983. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973). Therefore, the DOC and SCI-Forest are not "persons" within the meaning of 42 U.S.C. § 1983. Thus, all claims raised against them cannot proceed as a matter of law. The court will enter judgment in favor of the DOC and SCI-Forest.

### 2. Defendants Secretary of Corrections, Deal, and Carter

Similarly, the court notes that Defendants Secretary of Corrections, Deal, and Carter were named in the initial compliant, but Plaintiff failed to list any defendants specifically in the amended complaint. (Doc. 1, p. 2; Doc. 57.) In

addition, the amended complaint fails to allege any personal involvement on the part of these Defendants.  (Doc. 57.)  Therefore, the court will grant judgment in favor of Defendants Secretary of Corrections, Deal, and Carter in accord with *Baraka*.

### 3.  Defendant Oberlander

The only alleged facts involving Defendant Oberlander are limited to the February 19, 2021 exchange in which Plaintiff asked him why he was deprived of his property, Defendant Oberlander said it was the policy, Plaintiff stated it was abuse, and Defendant Oberlander stated he disagreed.  (Doc. 57, p. 6.)

As set forth above, to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West*, 487 U.S. at 48.  It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *See Baraka*, 481 F.3d at 210.

Since Defendant Oberlander took none of the alleged actions of depriving Plaintiff of his property, the court is left to infer that Plaintiff is raising claims

14

against Defendant Oberlander in his capacity as a supervisor.  This inference by the court is supported by Plaintiff's responsive briefing referring to a claim of indirect participation.  (Doc. 81, p. 3.)  Supervisory liability under § 1983 utilizes the same standard as municipal liability.  *See Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir. 1999).  A supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights.  *See id. at* 357.  To establish supervisory liability, a plaintiff must show that (1) a superior officer failed to employ a specific supervisory practice; (2) the existing custom created an unreasonable risk of injury in the absence of the specified supervisory practice; (3) the supervisor was aware that the risk existed; (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the failure to employ the supervisory practice.  *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 216 (3d Cir. 2005) (*citing Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989)).  Plaintiff failed to allege any of these requirements in the amended complaint.  Therefore, judgment will be entered in Defendant Oberlander's favor.

### C. Judgment Will Be Entered in Remaining Defendants' Favor on the Eighth Amendment Claims.

Defendants construed the complaint as raising an Eighth Amendment excessive force claim, an Eighth Amendment failure to intervene claim, and an Eighth Amendment conditions of confinement claim.  (Doc. 78.)  In his brief in

opposition, Plaintiff states that his not asserting an excessive force claim.  (Doc. 81, p. 3.)  Instead, Plaintiff states that he is asserting "failure to intervene, failure to act, conditions of confinement, failure to protect, cruel and unusual punishment, deliberate indifference, indirect participation, deprivation of clothing, civil conspiracy claim, and first amendment retaliation" claims.  (*Id.*)

### 1.  Excessive Force

The complaint appears to allege that Defendant Lesko used excessive force when he sprayed the OC spray in Plaintiff's cell on February 11, 2021.  (Doc. 57.) However, in Plaintiff's brief in opposition, he states that he is not asserting an excessive force claim.  (Doc. 81, p. 3.)  Therefore, Plaintiff has conceded the claim to Defendants and judgment will be entered in Defendants' favor for any excessive force claim stemming from the alleged actions of Defendant Lesko on February 11, 2021.

### 2.  Conditions of Confinement

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. Amend. VIII.  Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of

life violate the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'" *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).  Such a claim contains two requirements: an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A prisoner asserting a claim that the conditions of confinement violate the Eighth Amendment must allege: (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the defendant prison official personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ] reasonably to the risk." *Farmer*, 511 U.S. at 834, 844–45.

The Third Circuit has not directly addressed the issue in a published opinion, but has questioned, in an unpublished opinion, whether an inmate's exposure to freezing temperatures runs afoul of the Eighth Amendment, even when the inmate's cell "was so cold that it caused pain in his legs." *Burkholder v. Newton*, 11 Fed. Appx. 358, 363 (3d Cir. 2004).  The Third Circuit denied a conditions of

confinement claim based on exposure to cold temperatures and an unsanitary toilet for 30 days and further observed that "[c]ourts have found that the Eighth Amendment is not violated in much more harsh conditions" than those alleged by the plaintiff in that case. *See id.* Isolated instances of deficient and uncomfortable conditions do not constitute cruel and unusual punishment. *Roach v. Kligman,* 412 F.Supp. 521, 527 (E.D.Pa.1976) (confinement in a "cold and leaky" cell for short period of time does not violate Eighth Amendment). Similarly in a 2017 unpublished opinion, the Third Circuit held that allegedly cold conditions in cell did not violate the Eighth Amendment, absent showing that conditions were extreme or that prison officials were deliberately indifferent. *Bracey v. Sec'y Pa. Dep't of Corr.*, 686 F. App'x 130, 136 (3d Cir. 2017).

Here, Plaintiff's allegations were only that the cell was cold enough that he could not sleep. (Doc. 57, p. 2.) This allegation was less severe than those raised in *Burkholder*, which included allegations of the cold causing pain in his legs. Therefore, the court concludes that Plaintiff's allegations do not rise to the level of an Eighth Amendment violation and will enter judgment in favor of Defendants.

### 3. Failure to Intervene/Failure to Act/Failure to Protect

The court views Plaintiff's failure to intervene, failure to act, and failure to protect claims as a single claim of deliberate indifference. Since the court has found that Plaintiff's time in the cold cell without a blanket does not rise to the

level of a constitutional violation, the failure of the Defendants to intervene does not rise to the level of a constitutional violation.

The Supreme Court has found that an Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 (3d Cir. 2001). This deliberate indifference standard "is a subjective standard under *Farmer*-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* Thus, "[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety." *Hamilton v. Leavy,* 117 F.3d 742, 747 (3d Cir. 1997) (emphasis added).

Nothing in Plaintiff's amended complaint alleges any known risk to his safety, except an increased risk of COVID-19 exposure. However, the court finds that Plaintiff has not established how being placed in a cell on his own, albeit a cell that was cold, actually results in any increased COVID-19 exposure risk. Judgment will be entered in favor of Defendants.

**D. Judgment Will Be Entered in Favor of Defendants on the First Amendment Retaliation Claim.**

Plaintiff also raises a First Amendment claim against Defendants.  (Doc. 57.) It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts.  *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015).  A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment.  *Fantone*, 780 F.3d at 191.

Liberally construing the complaint, it appears that Plaintiff is alleging that he filed a verbal PREA complaint and an abuse complaint on the night between February 11, 2024 and February 12, 2024.  Defendants argue that the taking of Plaintiff's underwear and placement in a cold cell do not violate PREA or the DC-ADM 001.  (Doc. 78, p. 20.)

Defendants rely on an unpublished opinion from the Third Circuit, which held that "defendants may be able to show that the filing of the PREA complaints

was not protected action, if, for instance, the complaints were false or filed merely to harass." *Robinson v. Palco*, No. 21-2987, 2022 WL 3009746 (3d. Cir. 2022).

Without deciding whether Plaintiff's filing of PREA and abuse complaints are constitutionally protected conduct, the court finds that the evidence submitted by Defendants undermines the causation element of a retaliation claim. This court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity. *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Plaintiff failed to identify the subjects of his PREA and abuse claims. (Doc. 57.) Therefore, there is insufficient evidence to establish any causation for Plaintiff's First Amendment retaliation claim stemming from the alleged PREA and abuse claims filed on February 11-12, 2021. Furthermore, Defendants have supplied a record of grievances filed by Plaintiff at SCI-Forest,

and his earliest were filed on February 19, 2021.  (Doc. 77-6, pp. 2–3.)  According to Plaintiff's complaint, all the alleged retaliatory actions took place from February 12, 2021 through February 18, 2021.  (Doc. 57.)  Therefore, Plaintiff cannot establish causation between the grievances he filed and the retaliatory conduct alleged in the complaint.  All grievances post-date the alleged retaliatory conduct.  As such, judgment will be entered in Defendants' favor on the First Amendment claim.

### E. Judgment Will Be Entered in Defendants' Favor on All Remaining Claims.

According to Plaintiff's brief in opposition to the motion for summary judgment, Plaintiff attempted to raise claims of deprivation of clothing and civil conspiracy.  First, there is no specific cause of action for the deprivation of clothing under the Constitution outside of the Eighth Amendment.  This court has found that Plaintiff's treatment, including the deprivation of underwear, does not rise to the level of a constitutional violation.

Second, Plaintiff was required to plead three elements to assert a conspiracy claim under 42 U.S.C.  § 1983:

> (1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act 'under the color of state law'.

*Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n. 15 (3d Cir. 2018)

(internal citations omitted)).  Because no constitutional violation occurred,

Plaintiff's conspiracy claim cannot succeed.

### CONCLUSION

For the above-stated reasons, judgment will be entered in Defendants' favor.

Because judgment will be entered in Defendants' favor, the court will deny

Plaintiff's motion for a hearing and the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 22, 2024